[Woodroof v. Hundley.]

# Woodroof v. Hundley,

*Proceedings for Probate of Will.*

1. *Probate of will; admissibility in evidence of circumstances attending execution of the will.*—In the contest of the probate of a will, where each of the attesting witnesses are dead, and the principal issue is as to whether or not the will was duly executed, and the genuineness of the signatures of each of the attesting witnesses has been shown, it is competent for a witness who was staying with the testatrix and who had seen the will and recognized the signature of the testatrix imme-diately after its execution, to testify to the circumstances attendant upon the execution of said will, such as the reasons why the will was made, the going to the room of the testatrix of the lawyer and attesting witnesses for the purpose of its execution; and this is true, although such witness was not in the room at the time of the writing of the will, or when it was signed by any one, and, therefore, did not see its execution.

2. *Same; when evidence relating to revocation inadmissible.*—On the contest of the probate of a will, where one of the grounds of contest was that the will had been revoked and the proponent had shown *prima facie* its due execution, declarations of the testatrix that the instrument offered for probate was not her will, and the fact that after its execution she had sold or offered to sell certain property disposed of by said will, or that there had been a change in the testatrix' church relations, or that the estrangement between the testatrix and the contestant's father had been adjusted before her death, are immaterial and constitute no evidence of a revocation and, therefore, incompetent as evidence.

3. *Contest of will; when general affirmative charge given as to grounds of contest.*—Where the probate of a will is contested upon several grounds, and there is an entire absence of evi-dence to support the same by the grounds of contest, it is proper for the court at the request of the proponent to give the general affirmative charge in favor of the proponent as to the grounds which were not supported by any evidence.

4. *Same; charge to the jury.*—On the contest of the probate of a will, a charge is erroneous and properly refused which in-structs the jury that if they "find from the evidence that it

[Woodroof v. Hundley.]

is as reasonable to infer that the alleged attesting witnesses to the paper offered in evidence as the last will of W., deceased, subscribed their names thereto out of ner presence, as that any two of them subscribed their names in ner presence, then they may find in favor of the contestant."

APPEAL from the Probate Court of Limestone. Heard before the Hon. JAMES E. HORTON.

The appellee in this case, John Hundley, filed his application in the probate court of Limestone county asking that the paper presented for probate with said petition be probated as the last will and testament of Miss Mary Ann Walton, averring that he was named in said will as executor. The appellant, James W. Woodroof, one of the next of kin of said Mary Ann Walton, filed his contest for the probate of said will and assigned the following grounds therefor: "1. That the instrument in writing propounded by John Hundley as the last will and testament of said Mary Ann Walton, deceased, was not duly executed as her last will and testament. 2. That said instrument in writing was revoked by the said Mary Ann Walton, deceased, by another instrument in writing subsequently executed in the presence of witnesses as required by law by said Mary A. Walton, deceased, as and for her last will and testament. 3. That said instrument was procured by fraud and undue influence exerted upon said Mary A. Walton, deceased. 4. That said instrument was revoked by said Mary A. Walton by another instrument in writing subsequently executed by said Mary A. Walton in the presence of witnesses as required by law. 5. That at the date of said intrument in writing said Mary A. Walton's physical and mental condition was such as to render her incapable of executing a valid last will and testament. 6. That said instrument in writing was revoked by said Mary A. Walton by tearing the same apart with the intention of revoking it." Each of the witnesses whose names were affixed to said will as attesting witnesses were sworn to be dead. The proponent proved the death of the testatrix, the genuineness of her signature attached to said will, the death of the three witnesses whose names

appeared as attesting witnesses, and the genuineness of
their signatures, and also introduced evidence tending
to show that the will offered for probate was executed
by the testatrix in Nashville, Tennessee, just before she
was going to undergo a serious operation, and that it
was prepared for her by an attorney in Nashville,
her idea being, as stated, that not knowing whether or
not she would survive the operation, she wished to have
her property disposed of as she desired. This will was
executed on the 11th of September, 1876.

Mrs. Fannie M. Hundley, a witness for the propon-
ent, testified that she had known the testatrix since
1854; that she was a legatee and devisee under the will;
that she accompanied the testatrix to Nashville when
she went for the purpose of having the operation per-
formed. She then testified to having occupied the same
room with the testatrix and was in said room when
the attorney and the witnesses whose names were signed
as attesting witnesses came to the room for the pur-
pose of having the will executed; that a few minutes
after these persons entered she retired from the room
and was absent for an hour or more; that as she was
returning to the room she met said persons coming
from the room of Miss Walton; that when she entered
the room she saw a table near Miss Walton's bed and
lying on said table she saw the will which is sought to
be probated; that the last page of said will was ex-
posed, and she saw the signature of Miss Walton af-
fixed thereto, and also that of the attesting witnesses;
but she was not present when said will was signed and
when the witnesses whose names were signed thereto
signed it.

The contestant separately objected to each portion of
this witness' testimony, as stated above, upon the ground
that she was not in the room at the time of the writ-
ing of the will, or when it was signed by the testatrix,
or either of the attesting witnesses. The court over-
ruled each of such objections, and to each of these rul-
ings the contestant separately excepted.

The contestant sought to introduce in evidence cer-
tain statements made by the testatrix, to the effect that
the will which she had executed in Nashville was not

her will, and also that before her death she had conveyed certain property or had offered to sell other property which was disposed of in said will; that certain of the beneficiaries named in the will were not kin to her, while the testatrix was a half sister of the contestant's father, and also that the estrangement which had existed between the testatrix and the contestant's father had been adjusted and passed over some time before her death, and also that there had been a change in the church relations of the testatrix. To each portion of this testimony as offered by the contestant the proponent separately objected. The court sustained each of such objections, refused to allow the introduction of such testimony, and to each of such rulings the contestant separately excepted.

The evidence as to the revocation of the will of the testatrix was substantially the same as was shown on the former appeal in this case, and special reference is here made to the facts pertaining thereto as found in said report in 127 Ala. 642.

The court, at the request of the proponent, gave to the jury the following written charges, to the giving of each of which the contestant separately excepted: (2.) "I charge you, gentlemen of the jury, that there is no evidence before you to support the second ground of contest." (3.) "I charge you, gentlemen of the jury, that there is no evidence before you to support the fourth ground of contest." (4.) "I charge you, gentlemen of the jury, that there is no evidence before you to support the fifth ground of contest." (5.) "I charge you, gentlemen of the jury, that there is no evidence before you to support the sixth ground of contest."

Among the many charges requested by the contestant, and to the refusal to give each of which the contestant separately excepted, was the following: (13.) "If the jury find from the evidence that it is as reasonable to infer that the alleged attesting witnesses to the paper offered in evidence as the last will of Mary Ann Walton, deceased, subscribed their names thereto out of her presence, as that any two of them subscribed

their names in her presence, then they may find in favor of the contestant."

There were verdict and judgment in favor of the proponent, and the will was ordered to be admitted to probate as the last will and testament of Mary Ann Walton. The contestant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

R. W. WALKER, MILTON HUMES and W. T. SANDERS, for appellant.—In the case of the death or absence of the attesting witnesses, an attestation clause is *prima facie* evidence that the will was executed with the formalities therein recited, and that if there is no attestation clause, due execution of the will must be proved in some other way to entitle the paper to admission to probate.—29 Am. & Eng. Ency. Law, 199; 6 Lawson's R. R. & P., §§ 3199, 3200; 32 Am. Rep. 650; 25 N. Y. 429, note, and the rule repeatedly stated by the authorities, that, "in no case will the presumption of compliance with the statutory formalities recited arise unless the will appears upon its face to have been duly executed.—29 Am. & Eng. Ency. Law, 202; Schouler on Wills (2d ed.), § 347; 1 Jar. on Wills (5th ed.), § 86; Same (6th ed.), § 92, pp. 123, 124; 1 Red. on Wills (4th ed.), 234.

The provision for secondary evidence made by section 4276 of the Code is manifestly based upon the assumption that the primary evidence was available when the paper was executed and has only been rendered unavailable by subsequent events. Secondary evidence is admitted in consequence of a change of conditions rendering unavailable the primary evidence which could have been produced but for such change of conditions. It is the subsequent death, insanity, or incompetency of the witnesses which authorizes proof of their handwriting. The expression "absence from the State" found in such connection must be construed as referring to the absence from the State of one who was present in the State when the paper was signed. In other words, the assumption underlying this provision for secondary evidence is that the paper was signed in this State. The pro-

vision has reference to wills made in this State, not to wills made elsewhere. There is nothing to indicate that the provision had reference any more to wills made in other States of the Union than to wills made in any foreign country. It is not to be supposed that the provision was intended to apply to wills made in any, part of the world. Unless this supposition can be indulged, the operation of the provision for secondary evidence must be restricted to wills made in this State. The result is that wills made out of the State must be proved in the manner required before the enactment of this statute. That proof must be evidence showing a compliance with the requirements of the Alabama law. No such proof was adduced in this case. In the absence of such proof, the predicate for the admission of said paper as Miss Walton's will was not established, and the court should have given the affirmative charge in favor of the contestant.—Code, §§ 4263, 4276; *In re Thomas' Will,* 111 N. C. 409, 16 S. E. Rep. 226; *University v. Blount,* Term Rep. 13 (N. Co.); *Blount v. Patton,* 2 Hawk. 241; *Harvin v. Spring,* 10 Ired. 181; *Estate of Bogart,* 6 Civil Proc. 128; *Matter of Cottrell,* 5 Civil Proc. 340; *Barnewall v. Murrell,* 108 Ala. 367.

But as the whole question turns at last on the ascertainment of the testator's intention, the testator's declarations, both contemporaneous with, and subsequent to, the act, must be admissible in evidence to explain it; for an act may often amount to a revocation, when declared by the testator to be so intended, which standing alone would not justify a like inference.—1 Jarman on Wills (5th ed.) (Bigelow) 183 note (b) ; 1 Greenleaf on Ev. (14th ed.), § 273; *Weeks v. McBeth,* 14 Ala. 474; Schouler on Wills, § 431. "Usually the intention with which the act of spoliation or obliteration is done is for the determination of the jury, especially if it be of an equivocal nature."—29 Am. & Eng. Ency. Law, 326.

THOS. C. McCLELLAN and OSCAR HUNDLEY, *contra,* cited *Woodroof v. Hundley,* 127 Ala. 640; *Barnewall v. Murrell,* 108 Ala. 366; 19 Am. & Eng. Ency. Law (1st ed.), note, p. 1077.

[Woodroof v. Hundley.]

TYSON, J.—There was but one issue of fact for the determination of the jury, on the trial of the case, notwithstanding there were numerous grounds of contest interposed. That issue was, whether the evidence offered by the proponent was sufficient to authorize the jury to find that the will was duly executed. Confessedly if the will was properly admitted in evidence, the jury had the right to so find. So then, preliminary to the introduction of the will in evidence, it was incumbent upon the proponent to show *prima facie* its due execution. This he did, when he made proof of the death of the testatrix, the genuineness of her signature, the death of the three persons whose names appear as attesting witnesses and the genuineness of their signatures, when coupled with the circumstances testified to by Mrs. Hundley.—*Woodroof v. Hundley*, 127 Ala. 640.

But it is insisted that Mrs. Hundley's testimony was irrelevant and should not have been admitted. This insistence seems to be predicated upon the theory that she was not in the room at the time of the writing of the will, or when it was signed by anyone. In other words, she did not see its execution. We do not understand the rule to be, when the attesting witnesses are dead that all the circumstances tending to show their attestation in the presence of the testator cannot be proven. The establishment of that fact, we take it, may be proven by circumstances as well as by direct or positive evidence. Indeed, were the witnesses living the fact of their attestation in the presence of the testator, when controverted, we doubt not, might be shown by circumstantial evidence. Otherwise, proof of the execution of a will would be restricted to the testimony of the witnesses attesting it and its probate dependent upon their veracity. Such a rule would place it in the power of a single witness, to defeat its probate and effectually destroy it. Indeed this result would follow, should the witnesses, though honest and truthful, be unable to recall the fact of attestation in the presence of the testator. The circumstances bearing

[Woodroof v. Hundley.]

upon the execution of the will, as detailed by Mrs. Hundley, were clearly competent.

The evidence with respect to the revocation of the will by tearing was substantially the same on this trial as upon the former. In our opinion heretofore, we held, after a careful and thorough consideration of the question, that no act of revocation had been shown, and that all declarations of the testatrix subsequent to the making of the will tending to show that she had revoked it were clearly incompetent. We adhere to what we said in that opinion upon this question as well as upon the one involving the proof of its execution. There was no error in the exclusion of the declarations of the testatrix offered by the contestant. So, too, the fact that the testatrix had, before her death, conveyed certain property, or that she had offered or attempted to sell certain other property, that certain beneficiaries named in the will were not of kin to her, or were dead, or that there had been a change in the testatrix's church relations, or the estrangement between the testatrix and the contestant's father had passed away some time before her death, were incompetent. None nor all of these things were nor could be evidence of a revocation.

The assignments of error are so numerous, that it is impracticable to treat each of them separately. However, all of those insisted upon in argument and based upon exceptions reserved to the admission of testimony are disposed of by what we have said. We have only left for consideration written charges given at the request of the proponent and those refused to the contestant. As to those given for proponent, there was clearly no error. There was an entire absence of evidence to support the grounds of contest designated in each of them. As to those refused to contestant, only one is insisted upon—No. 13. This charge was clearly misleading if not wholly bad. The rule is "if any theory consistent with the validity of the will can be suggested, which appears to the court to be as probable as the theory, on which the argument for the invalidity is based, the will as found must be maintained."—*Barnewall v. Murrell*, 108 Ala. 379, 380.

[Clem v. Wise.]

There is no error in the record, and the decree of the probate court admitting the will to probate is affirmed.